UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL HACKNEY,

       Plaintiff,

v.                                                     Case No. 22-cv-12612
                                                       Honorable Linda V. Parker

LAFONTAINE CHRYSLER DODGE
JEEP RAM OF CLINTON, INC.,

       Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 21)

On October 31, 2022, Plaintiff Samuel Hackney initiated this lawsuit

claiming that his employer retaliated against him in violation of Title VII of the

Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a), and Michigan's

Elliot-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2701.  (ECF

No. 1.)

On February 1, 2023, Mr. Hackney filed an amended complaint naming

LaFontaine Chrysler Dodge Jeep Ram of Clinton, Inc. as his employer.  (ECF No.

14.)  This matter is presently before the Court on LaFontaine's motion for

summary judgment pursuant to Federal Rule of Civil Procedure 56(c), which has

been fully briefed.  (ECF No. 21.)  Finding the facts and legal arguments

adequately presented in the parties' filings, the Court is dispensing with oral

argument pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons that follow, the Court grants the motion.

## I.    Factual Background

LaFontaine hired Mr. Hackney, an Arab American, on April 1, 2021, as a Finance and Insurance Manager at its Clinton, Michigan car dealership location. (ECF No. 21-2 at Pg ID 127; ECF No. 21-3 at Pg ID 144.) Mr. Hackney was assigned to LaFontaine's Used Car Sales Department. (ECF No. 21-3 at Pg ID 140.) At the time of his employment, John Berghoefer was the General Manager and David Riley was the Used Car Sales Manager and Mr. Hackney's direct supervisor. (*Id.*; ECF No. 21-6 at Pg ID 169.)

Mr. Hackney's role required him to ensure that customer information was accurately entered into the company's databases and, on occasion, verify customers' titles, liens, and tax information. (ECF No. 21-3 at Pg ID 154; *see also* ECF No. 21-5 at Pg ID 165.) As part of the onboarding process, Car Finance Manager Summer Hazimi was supposed to be responsible for mentoring Mr. Hackney and training him on financing at the dealership. (ECF No. 21-3 at Pg ID 140.) However, these responsibilities became a low priority given her busy schedule. (*Id.*) Mr. Hackney did not have much contact with Ms. Hazimi, and she was often unavailable and inaccessible. (*Id.* at 139-40.) Thus, he did not have the tools, computer accesses, or training he needed to properly carry out his job. (*See*

2

*id*. at 139-41.)  For example, he did not have a stylus for signing electronic contracts or the credentials to access company electronic databases.  (*See id*. at Pg ID 139, 141.)  When Mr. Hackney could not reach Ms. Hazimi, he sought guidance from Mr. Riley and individuals outside the company.  (*Id*. at Pg ID 140-41.)

In one instance on May 13, 2021,[1]  Mr. Hackney needed the password information to access a particular website, so he went to Mr. Riley's office for help.  (*Id*. at Pg ID 147.)  As with earlier discussions between the two, Mr. Riley reiterated to Mr. Hackney that Ms. Hazimi was responsible for training him.  (*Id*.)  Mr. Hackney informed him that Ms. Hazimi was unhelpful, to which Mr. Riley responded, "fucking sand nigger!" (*Id*. at Pg ID 148.)[2]   Offended by Mr. Riley's comment and believing it was about Ms. Hazimi's Middle Eastern background, Mr. Hackney asked Mr. Riley, "Do you know I'm Lebanese?"  (*Id*.)  Mr. Riley answered, "I thought you were Mexican."  (*Id*.)

---

[1] Mr. Hackney could not recall the date of his interaction with Mr. Riley, but testified that he met with Mr. Riley on a Thursday and that he was discharged the following Monday.  (*See* ECF No. 21-3 at Pg ID 147.)  LaFontaine's paperwork indicates that Mr. Hackney's last day at the company was on May 17, 2021, leading the Court to assume that Mr. Hackney met with Mr. Riley on May 13, 2021.  (ECF No. 21-9 at Pg ID 216.)

[2] Mr. Riley denies that he made a discriminatory remark about Ms. Hazimi.  (ECF No. 21-8 at Pg ID 213.)  However, the Court will "consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

3

Immediately after the exchange, Mr. Hackney left Mr. Riley's office and asked a coworker for a point of contact in the company's Human Resources Department.  (*Id*.)  A coworker instructed him to reach out to someone named Lauren.  (*Id*. at Pg ID 148, 155.)  Mr. Hackney could not find Lauren's phone number in the company directory, so he asked a different coworker, John Martin, for it.  (*Id*.)  Mr. Martin dialed Lauren's number from the company's phone and handed it to Mr. Hackney.  (*Id*.)  Mr. Hackney left a voicemail for Lauren that included his name and a callback request.  (*Id*.)  He did not leave Lauren a callback number or explain the reason for his call.  (*Id*. at Pg ID 155.)

Just four days after these events, LaFontaine ended Mr. Hackney's employment with the company.  (*Id*.)  Mr. Berghoefer made the ultimate decision to terminate Mr. Hackney but testified that this decision was made at the request of Mr. Riley and Ms. Hazimi.  (ECF No. 21-6 at Pg ID 170.)  Mr. Berghoefer noted Mr. Hackney's poor work performance and attendance as the basis for termination.  (*Id*.)

Before the exchange between Mr. Riley and Mr. Hackney and less than thirty days after Mr. Hackney was hired, coworkers complained about Mr. Hackney, namely Mr. Riley and Ms. Hazimi, who informed Mr. Berghoefer that Mr. Hackney was underperforming.  (*Id*.)  Mr. Berghoefer advised them to conduct a thirty-day review with Mr. Hackney to help improve his performance–which was

atypical for new employees.  (*Id*.; ECF No. 21-8 at Pg ID 213.)  Around May 3, 2021, Mr. Riley and Ms. Hazimi met with Mr. Hackney for his review.  (ECF No. 21-7 at Pg ID 176; ECF No. 21-8 at Pg ID 213.)  According to LaFontaine, Mr. Hackney "continued to make significant mistakes in completing and handling the paperwork associated with financing and insurance on used car sales," which affected the dealership's performance.  (ECF No. 21-6 at Pg ID 170.)

In the six weeks Mr. Hackney worked at the dealership, Ms. Hazimi documented some of Mr. Hackney's mistakes.  (ECF No. 21-7 at Pg ID 175-78.)  In April, Ms. Hazimi sent four emails to Mr. Hackney highlighting various issues: not using an electronic contract in a deal (*id*. at Pg ID 180-81), incorrectly listing the finance amount on the customer's paperwork (*id*. at Pg ID 183), improper sales to a customer (*id*. at Pg ID 186-87), and completing transactions without the necessary customer information (*id*. at Pg ID 189).  Ms. Hazimi sent Mr. Hackney six more emails in May about his deal mistakes, including not sending necessary loan information to credit unions (*id*. at Pg ID 192, 195), not sending an electronic contract in deals (*id*. at Pg ID 198-99, 208-09), not including in a packet the necessary paperwork to fund a deal (*id*. at Pg ID 201-02), and improperly completing deals (*id*. at Pg ID 205-06).

Following his termination, Mr. Hackney filed a charge with the Equal Employment Opportunity Commission ("EEOC"), which reported the incident

5

with Mr. Riley and claimed discrimination based on national origin and retaliation.

(ECF No. 21-3 at Pg ID 154-55.)  On September 23, 2022, the EEOC issued a

right-to-sue letter to Mr. Hackney.  (ECF No. 21-11 at Pg. ID 223.)

## II.   Standard of Review

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is

appropriate "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  The central inquiry is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56

mandates summary judgment against a party who fails to establish the existence of

an element essential to that party's case and on which that party bears the burden

of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine

issue of material fact."  *Id*. at 323.  Once the movant meets this burden, the

"nonmoving party must come forward with specific facts showing that there is a

genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  To

demonstrate a genuine issue, the nonmoving party must present sufficient evidence

6

upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court must accept as true the nonmovant's evidence and draw "all justifiable inferences" in the nonmovant's favor. *See id*. at 255.

### III.    Applicable Law and Analysis

In its motion for summary judgment, LaFontaine seeks summary judgment on a determination that Mr. Hackney has insufficiently shown that he opposed Mr. Riley's discriminatory comment regarding national origin, LaFontaine did not know about Mr. Hackney's opposition, that Mr. Hackney cannot refute that LaFontaine terminated him based on his work performance–a legitimate, nonretaliatory reason, and that Mr. Hackney does not have sufficient proof to advance his claims on the cat's paw theory of liability. (ECF No. 21 at Pg ID 108; ECF No. 23 at Pg ID 293.)

Conversely, Mr. Hackney maintains that he has met his burden as to his Title VII and ELCRA retaliation claims because he opposed Mr. Riley's comment by immediately confronting him, thereby making LaFontaine aware of his opposition. (ECF No. 22 at Pg ID 245-46.) As a result of his opposition, Mr. Hackney argues that Mr. Riley, through Mr. Berghoefer, unlawfully retaliated against him and LaFontaine should be held liable under the law. (*Id*.)

### A.    Prima Facie Case

With respect to Mr. Hackney's prima facie case for his retaliation claims, the Court finds that a reasonable jury could conclude that Mr. Hackney has satisfied his burden.

Mr. Hackney does not present any direct evidence to support his retaliation claims; therefore, the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) applies. *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021). Under federal and Michigan law, Mr. Hackney must first establish a prima facie case of retaliation by showing: (1) he engaged in a statutory protected activity; (2) LaFontaine had knowledge that he engaged in the protected activity; (3) LaFontaine took adverse employment action against Mr. Hackney because of the protected activity; and (4) there was a causal connection between the adverse employment action and the protected activity. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013). The Sixth Circuit makes clear that "[t]he burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Id*. (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008)).

The parties do not dispute the third prong of the prima facie claim; thus, the Court will not address that element.

    *1. Protected activity*

8

As an initial matter, LaFontaine argues that Mr. Hackney's response to Mr. Riley was not an oppositional activity and falls short of triggering Title VII and ELCRA protections.  (ECF No. 23 at Pg ID 293-94.)  The Court finds that Mr. Hackney has presented sufficient evidence for a reasonable jury to conclude differently.

Under federal and state laws, employers may not retaliate against employees for engaging in protected conduct.  Known as the opposition clause, Title VII[3] makes it unlawful for "an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter . . . ."  42 U.S.C. § 2000e-3(a).  Similarly, ELCRA states that one shall not "[r]etaliate or discriminate against a person because the person has opposed a violation of this act."  Mich. Comp. Laws § 37.2701(a).  The Sixth Circuit treats the legal standard for a retaliation claim under Title VII and ELCRA equally.  *Wasek v. Arrow Energy Servs.*, *Inc.*, 682 F.3d 463, 472 (6th Cir. 2012).

As noted by both parties, neither Title VII nor ELCRA define "opposed" as used in the opposition clause.  *See* 42 U.S.C. §§ 2000e, 2000e-3; Mich. Comp. Laws §§ 37.2202, .2701.  Fortunately, caselaw and the EEOC clarify its meaning.

---

[3] Not applicable here, an employee may also have grounds for action against her employer under Title VII's participation clause.  *See* 42 U.S.C. § 2000e-3(a).

9

The Supreme Court makes clear that "opposed" means "to resist or antagonize . . .;
to contend against; to confront; resist; withstand," as defined by its ordinary
meaning. *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271,
276 (2009) (quoting Webster's New Int'l Dictionary 1710 (2d ed. 1957)).  Relying
on the EEOC's interpretation of the opposition clause, the Supreme Court explains
that "[w]hen an employee communicates to her employer a belief that the
employer has engaged in . . .  a form of employment discrimination, that
communication" virtually always "constitutes the employee's opposition to the
activity."  *Id*. at 276 (quoting Brief for United States as Amicus Curiae 9); *see also
EEOC v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015) (explaining
that the Sixth Circuit gives "great deference" to the EEOC's interpretation of what
constitutes opposing conduct).

The Sixth Circuit adds that "[t]o come within the protection of Title VII, the
plaintiff need only 'establish that he challenged an employment practice that he
reasonably believed was unlawful,'" even if the belief is incorrect.  *Yazdian v.
ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 645-46 (6th Cir. 2015).  The
complaint may be directed to anyone, including the plaintiff's coworkers and
managers. *Jackson*, 999 F.3d at 344-45.  So long as the employee's challenge was
done in a "reasonable manner" and consisted of a clear and specific charge of

discrimination (rather than a vague claim), he may have grounds to succeed under the opposition theory.  *Id*. at 345.

The requirement that Mr. Hackney make an "overt stand" against an employer, *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012), does not mean that he has to communicate his offense using legal jargon or with "absolute formality, clarity, or precision," *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989).  "The governing principle [is] . . . that the language used be enough, in a specific factual context, to convey the accusation and its basis."  *Crawford v. Chipotle Mexican Grill, Inc.*, 773 F. App'x 822, 829 (6th Cir. 2019).  In applying these rules, courts essentially assess an employee's complaints on a case-by-case basis.

Here, Mr. Hackney, an Arab American, reasonably believed that Mr. Riley unlawfully discriminated against him when Mr. Riley called Ms. Hazimi, also an Arab American, "a fucking sand nigger."  (*See* ECF No. 21-3 at Pg ID 148.) Immediately after Mr. Riley made the comment, Mr. Hackney questioned him to convey that the comment was inappropriate and offensive.  (*Id*.)  With Ms. Hazimi being the subject of the conversation, Mr. Riley could have interpreted Mr. Hackney's question as a direct confrontation to his comment about Ms. Hazimi's national origin.  (*See id*.)  Indeed, the record suggests that Mr. Riley did in fact understand Mr. Hackney's question as opposition as indicated by his response, "I

thought you were Mexican." (*Id.*)  A reasonable jury could construe such reaction

as evidence that he was aware of the basis of Mr. Hackney's question.

LaFontaine posits that the law required Mr. Hackney to do more to express

his opposition.  (ECF No. 23 at Pg ID 294.)  LaFontaine relies on the Court's

decision in *Whitcher v. McLaren Lapeer Region*, No. CV 20-11449, 2022 WL

187812 (E.D. Mich. Jan. 19, 2022).  (ECF No. 23 at Pg ID 294.)  In that case, the

Court held that the plaintiff did not engage in oppositional conduct when she

received information about sexual harassment in the workplace and noted the

harassment without sharing the report with anyone, let alone the accused person

who she alleged retaliated against her.  *Whitcher*, 2022 WL 187812, at *2-4.  It is

important to highlight the factual distinctions between *Whitcher* and the instant

case to understand why the Court reached a different conclusion.

Most notably, when Whitcher received the information about her boss

sexually harassing another coworker, she kept the information to herself and made

no effort to complain to anyone about the unlawful practice.  *Id*. at *4.  As the

defendant's human resources manager, it would have been reasonable (and

expected) for her to communicate such unlawful practices to others at the company

somehow.  *Id*. at *1.  Thus, the Court found that more action was needed from the

plaintiff to give rise to opposition.  *Id*. at *4.

The facts are different here.  Unlike Whitcher, Mr. Hackney did not keep his complaint about Mr. Riley's comment bottled up; he addressed it in that moment. (ECF No. 21-3 at Pg ID 148.)  Even more, Mr. Hackney was a newly hired employee faced with an epithet made by his supervisor.  (*Id*.)  His chosen form of opposition was reasonable in that particular circumstance and, most importantly, not too generalized.  Not to mention, he was fired just two business days after his interaction with Mr. Riley, limiting the timeframe for him to explore other options to further convey his opposition.  (*Id*. at Pg ID 155.)

Mr. Hackney did not have to share his complaint with the entire dealership or invoke specific words to alert Mr. Riley that an unlawful employment practice was at the crux of his question as LaFontaine suggests.  (*See* ECF No. 23 at Pg ID 294.)  Moreover, the limited availability of factually analogous caselaw does not bar Mr. Hackney from statutory protection.  (*See id*.)

On these facts, a jury could reasonably conclude that Mr. Hackney's response–"Do you know I'm Lebanese?"–was more than a trivial question.  But rather an acceptable tactic to convey opposition.

## 2. *Knowledge of the protected activity*

Next, LaFontaine argues that Mr. Hackney did not make the company aware that he engaged in a protected activity.  (*Id*. at Pg ID 294-97.)  However, taking the

evidence in the light most favorable to Mr. Hackney, the nonmoving party, there is sufficient evidence to establish LaFontaine's knowledge of the protected activity.

Mr. Hackney can show that LaFontaine was aware of his protected activity by producing direct evidence or by "present[ing] sufficient evidence from which a reasonable factfinder could infer that [decisionmakers] knew that Plaintiff previously had" engaged in a protected activity. *Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 482 (6th Cir. 2008) (quoting *Kirkendoll v. McCullough*, 2006 WL 14561, at *11 (M.D. Tenn. Jan. 3, 2006)).

The Sixth Circuit elaborated on the circumstantial evidence and the knowledge requirement in *Mulhall v. Ashcroft*, 287 F.3d 543, 551-54 (6th Cir. 2002), which, like here, involved an adverse action taken by someone other than the person who received the complaint. In *Mulhall*, the Sixth Circuit explained that "knowledge of a plaintiff's protected activity can be inferred from evidence of the prior interaction of individuals with such knowledge and those taking the adverse employment action." *Mulhall*, 287 F.3d at 553 (citing *Kralowec v. Prince George's Cnty.*, 503 F. Supp. 985 (D. Md.1980), *aff'd*, 679 F.2d 883 (4th Cir. 1982)). The Sixth Circuit affirmed the lower court's decision, in part, because the record was void of evidence showing any interaction between Mulhall's coworker, who allegedly knew of Mulhall's involvement in an EEOC investigation, and Mulhall's supervisor, who ultimately took adverse action against him. *Id*. at 554.

14

The court distinguished *Mulhall* from *Kralowec*, where the plaintiff met her burden by pointing to specific facts that implied that Official 1, who knew about her complaint, told Official 2, who fired her, about the protected activity at issue. *Id*. at 553. The record in *Kralowec* showed that Official 1 "actually participated in drafting the charges against the plaintiff that resulted in her discharge" and also had prior interactions with Official 2, making it likely that Official 1 shared the information with Official 2. *Id*.

Here, Mr. Berghoefer, LaFontaine's General Manager, was "the sole decision-maker" of Mr. Hackney's employment status with the company. (ECF No. 23 at Pg ID 295.) According to LaFontaine, Mr. Berghoefer learned about Mr. Riley's discriminatory comment during the company's investigation of Mr. Hackney's EEOC complaint, which was months after Mr. Hackney's departure from the company. (*Id*.; *see* ECF No. 21-6 at Pg ID 170.) Yet, Mr. Berghoefer testified that he "approved the decision to terminate Mr. Hackney[] . . . at the request of Riley and Hazimi . . . ." (ECF No. 21-6 at Pg ID 170.) Like in *Kralowec*, Mr. Riley (Official 1) was involved in the termination decision and interacted with Mr. Berghoefer (Official 2) prior to him ending Mr. Hackney's employment. (*Id*.) A reasonable jury could undoubtedly infer from the evidence that Mr. Berghoefer learned about Mr. Hackney's objection to Mr. Riley before making the ultimate termination decision.

At the summary judgment stage, the Court is not charged with deciding the specifics of Mr. Riley's involvement in Mr. Berghoefer's decision-making process. *See Anderson*, 477 U.S. at 243 (holding that a trial judge's "inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). Thus, Mr. Hackney has met his burden with respect to the second element.

### 3. Causal connection

LaFontaine also argues that Mr. Hackney has not presented any facts to show a causal connection between Mr. Hackney's objection to Mr. Riley and his subsequent termination. (ECF No. 21 at Pg ID 113.) The Court disagrees.

In the antiretaliation context, the plaintiff must establish but-for causation to satisfy his burden. *New Breed Logistics*, 783 F.3d at 1066; *Chipotle Mexican Grill, Inc.*, 773 F. App'x 822, 829 (6th Cir. 2019) ("[Plaintiff] must have enough evidence for a jury to conclude that 'but for' [his] opposition, [he] would not have been terminated."). Put differently, Mr. Hackney must "produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken in the absence of the protected conduct." *Weigel v. Baptist Hosp.*, 302 F.3d 367, 381 (6th Cir. 2002) (internal quotations omitted).

As acknowledged by LaFontaine, the Sixth Circuit holds that temporal activity alone is sufficient to make a causation inference.  *Mickey*, 516 F.3d at 525. This rule is especially true in cases where the temporal proximity is "very close," *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001), as in "a matter of months, or less," *see, e.g.*, *Dye v. Off. of the Racing Comm'n*, 702 F.3d 286, 306 (6th Cir. 2012).  The Sixth Circuit bases its holding on the belief that employers could easily circumvent the law by taking immediate adverse action against an employee after gaining knowledge of that employee's protected activity.  *Mickey*, 516 F.3d at 525.

As previously discussed, Mr. Hackney engaged in a protected activity on May 13, 2021, when he objected to Mr. Riley's discriminatory comment by asking Mr. Riley, "Do you know I'm Lebanese?"  (ECF No. 21-3 at Pg ID 148.) LaFontaine fired Mr. Hackney just four days later.  (*Id*. at Pg ID 155.)

In instances like here, where the protected activity and adverse employment action occur in quick succession, a triable issue exists as to whether LaFontaine's termination decision was an unlawful, hasty response to Mr. Hackney's protected activity.

### B.    Legitimate, Nondiscriminatory Reason

Next, the Court finds that LaFontaine has presented sufficient facts to meet its burden.  Once Mr. Hackney has established his prima facie case, the burden shifts to LaFontaine to articulate "some legitimate, nondiscriminatory reason" for

17

termination.  *McDonnell Douglas Corp.*, 411 U.S. at 802; *Jackson*, 999 F.3d at 344.

Mr. Hackney's attempt to apply *Bostock v. Clayton County*, 590 U.S. 644 (2020) here is misplaced.  *Bostock* addressed matters where employers fired their employees because of their membership in a protected group–an action different from the one at bar.  *Id*. at 649.  As it stands today, in the Title VII retaliation context and, by extension, ELCRA, LaFontaine's burden with respect to articulating a legitimate, nondiscriminatory, and nonretaliatory reason for termination is relatively low.  *See Chattman v. Toho Tenax Am., Inc*., 686 F.3d 339, 349 (6th Cir. 2012).  Its burden is "merely one of production, not persuasion." *Id*.  If LaFontaine reasonably relies on "the particularized facts that were before it at the time the decision was made," it will meet its burden.  *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)); *see also Mickey*, 516 F.3d at 526–27 (holding that summary judgment is inappropriate when facts "exist from which a reasonable jury could conclude that the . . . business decision was so lacking in merit as to call into question its genuineness") (internal quotations and citation omitted).

Here, LaFontaine cites Mr. Hackney's poor work performance as its reason for termination (ECF No. 21 at Pg ID 116; ECF No. 23 at Pg ID 297), which is a legitimate business reason for terminating an employee, *Imwalle v. Reliance Med.*

*Prod., Inc.*, 515 F.3d 531, 546 (6th Cir. 2008).  The record supports LaFontaine's asserted reason.

As LaFontaine points out, Mr. Hackney developed a track record of "errors and omissions throughout the approximately [forty-seven] days he was employed at LaFontaine."  (ECF No. 21 at Pg ID 117.)   Mr. Berghoefer testified that Mr. Hackney's deficiencies were significant and jeopardized the dealership's overall performance.  (ECF No. 21-6 at Pg 170.)  As General Manager, Mr. Berghoefer learned about Mr. Hackney's performance from those who worked closely with Mr. Hackney, including his supervisor, Mr. Riley, and assigned mentor, Ms. Hazimi.  (*Id*.)   Mr. Hazimi's emails to Mr. Hackney revealed that Mr. Hackney struggled with submitting deal paperwork accurately and in the correct format.  (ECF No. 21 at Pg ID 117; ECF No. 21-7 at Pg ID 175-78.)  In his deposition, Mr. Riley recounted that Mr. Hackney's performance was so problematic that he and Ms. Hazimi met with Mr. Hackney to conduct a thirty-day review, which was an uncommon practice for newly hired employees.  (ECF No. 21-8 at Pg ID 213.)

At this step of the analysis, these facts are enough to establish that LaFontaine's proffered reason was grounded in "particularized facts that were before it at the time" Mr. Berghoefer made his decision.  *Wright*, 455 F.3d at 708.

### C.    Pretext

At the final step of the *McDonnell Douglas* analysis, the Court believes there is a genuine dispute as to a material fact–whether Mr. Hackney has presented sufficient evidence for a reasonable jury to conclude that LaFontaine's proffered reason for termination was a pretext for retaliation.

With the burden shifted back to Mr. Hackney, he must rebut LaFontaine's proffered, nonretaliatory reason for termination by showing that it was mere pretext for discrimination. *Jackson*, 999 F.3d at 344 (citing *McDonnell Douglas Corp.*, 411 U.S. at 804). "The ultimate burden . . . remains with [Mr. Hackney] to convince the factfinder that [LaFontaine] retaliated against [him] for engaging in protected activity." *Id.*

To show pretext, Mr. Hackney "must produce evidence that either the proffered reason (1) has no basis in fact, (2) did not actually motivate the adverse employment action, or (3) was insufficient to warrant the adverse action." *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 502 (6th Cir.2009). Temporal proximity, coupled with such evidence, can further establish pretext. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001) (holding that "temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual"); *DeBoer v. Musashi Auto Parts, Inc.*, 124 F. App'x 387, 393 (6th Cir. 2005) (explaining that "suspicious timing is a strong indicator of pretext" when other

20

evidence of pretext exists).  Furthermore, summary judgment does not require Mr.

Hackney to "prove pretext; [he] only needs to show that the question of pretext is a

genuine factual dispute." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*,

974 F.3d 652, 667 (6th Cir. 2020); *see also* Fed. R. Civ. P. 56(e)(2).

Here, Mr. Hackney does not challenge LaFontaine's proffered reason on the

first or third approach.  Mr. Hackney instead argues that his work performance did

not actually motivate LaFontaine to fire him.  (*See* ECF No. 22 at Pg ID 257.)

Under this approach, Mr. Hackney can "attempt[ ] to indict the credibility of his

employer's explanation by showing circumstances which tend to prove that an

illegal motivation was more likely than that offered by the defendant." *Moon v.

State*, 117 F.3d 1420 (6th Cir. 1997).[4]  In effect, Mr. Hackney concedes that his

work performance may have been unsatisfactory and even acknowledges that such

conduct *could* motivate dismissal, but he points out other circumstantial evidence

that undermines LaFontaine's proffered reason.  *See Lamer v. Metaldyne Co.*, 240

F. App'x 22, 31 (6th Cir. 2007).

Mr. Hackney argues that LaFontaine undercut its defense by claiming that

Mr. Berghoefer was unaware of the exchange between him and Mr. Riley, and, at

---

[4] When credibility is at issue, the Court avoids "making credibility determinations, weighing evidence, and 'drawing of legitimate inferences' in favor of the moving party because those are 'jury functions, not those of a judge.'" *Yazdian*, 793 F.3d at 644 (quoting *Anderson*, 477 U.S. at 255).

the same time, confirming that Mr. Riley played a part in his termination.  (ECF No. 22 at Pg ID 257.)  Mr. Hackney also points out the close timing of these events.  (*Id*.)   Just four days after Mr. Hackney challenged Mr. Riley, Mr. Riley recommended that Mr. Berghoefer terminate Mr. Hackney, to which Mr. Berghoefer obliged.  (*Id*.)

These facts could lead a reasonable jury to find that LaFontaine more likely than not fired Mr. Hackney days after the confrontation because Mr. Riley informed Mr. Berghoefer of the incident.  On the other hand, a jury could also conclude that termination was an inevitable fate for Mr. Hackney given his work performance record.  "Because there are two reasonable interpretations, and because [the Court] must accept the version most favorable to [Mr. Hackney], which is sufficient evidence of pretext," Mr. Hackney has satisfied his burden. *Yazdian*, 793 F.3d at 653.

### D.    Cat's Paw Theory of Liability

Because Mr. Riley was not the ultimate decisionmaker as to Mr. Hackney's termination, the question remains whether a genuine issue of material fact exists to show that Mr. Berghoefer was a conduit of Mr. Riley's retaliatory animus.  The Court answers in the negative.

Mr. Hackney must establish that Mr. Berghoefer was the "cat's paw" of Mr. Riley.  *See Marshall v. The Rawlings Co.*, 854 F.3d 368, 383 (6th Cir. 2017).  The

cat's paw theory[5] imputes liability onto the employer when a "biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Id*. at 377; *Roberts v. Principi*, 283 F. App'x 325, 333 (6th Cir. 2008) (describing the non-decisionmaker as "the driving force behind the employment action").  In other words, the doctrine allows Mr. Hackney to "hold [LaFontaine] liable for the animus of [Mr. Riley] who was not charged with making the ultimate employment decision." *Staub v. Proctor Hosp.*, 562 U.S. 411, 415 (2011).

To survive summary judgment under this theory, Mr. Hackney must show that (1) Mr. Riley, a non-decisionmaker, motivated by retaliatory animus towards Mr. Hackney, intended to cause Mr. Hackney's termination[6] and (2) Mr. Riley's

---

[5] The Sixth Circuit holds that the cat's paw doctrine applies to Title VII claims. *Chattman*, 686 F.3d at 351 n.10.  In analyzing such claims, the Sixth Circuit addresses the cat's paw doctrine and *McDonnell Douglas* analyses separately. *Marshall*, 854 F.3d at 379-80 ("Plaintiffs alleging . . . retaliation based on a cat's paw theory of liability must satisfy the requirements of the *McDonnell Douglas* framework and prove that the decisionmaker was the cat's paw of a biased subordinate, so it makes sense to analyze each issue separately.").

[6] LaFontaine incorrectly argues that Mr. Hackney has to show that Mr. Riley *and* Mr. Berghoefer fired him because of their discriminatory animus.  (ECF No. 23 at Pg ID 296.)  LaFontaine cites to *Staub*.  (*Id*.)  But there, the plaintiff was required to show that his supervisor, Mulally, and Mulally's supervisor, Korenchuk, intended to cause the adverse employment actions because he alleged that Mulally and Korenchuk each influenced the company's vice president of human resources to take adverse action.  *Staub*, 562 U.S. 411 at 414, 422-23.

retaliation was the but-for cause of Mr. Berghoefer's decision to terminate Mr.

Hackney. *Seoane-Vazquez v. Ohio State Univ.*, 577 F. App'x 418, 428 (6th Cir.

2014).

With respect to the second prong, the Sixth Circuit holds that, like in a

plaintiff's prima facie case, the but-for standard of causation is the proper standard

for liability under the cat's paw doctrine, not the proximate cause standard set out

in *Staub*. *See id*. at 427.  The rule came at the heels of *University of Texas*

*Southwestern Medical Center v. Nassar*, 570 U.S. 338, 362 (2013), which

differentiated the causation standard in discrimination and retaliation cases.  In

interpreting the statutory history of Title VII and § 2000e-3(a), the Supreme Court

held that Title VII retaliation claims require a heightened causation standard.  *Id*. at

362.  Thus, in today's Post-*Nassar* world, "a Title VII plaintiff alleging retaliation

cannot establish liability if her firing was prompted by both legitimate and

illegitimate factors."  *Id*. at 383-84 (Ginsburg, J., dissenting).

Here, the parties have not assessed the facts as applied to the but-for

standard.  By Mr. Hackney's account, he need only show that Mr. Riley influenced

Mr. Berghoefer to make the termination decision.  (ECF No. 22 at Pg ID 252.)

Conversely, LaFontaine cites *Staub's* proximate cause standard.  (ECF No. 23 at

Pg ID 296.)  Turning to the record, the Court is hard-pressed to find any facts that

could lead a reasonable jury to conclude that absent Mr. Hackney confronting Mr.

Riley he would not have lost his job.  Even viewing the evidence in the light most favorable to Mr. Hackney, the cat's paw theory falls flat because both legitimate and illegitimate factors are at play here.

Mr. Berghoefer made the ultimate decision to terminate Mr. Hackney but did so at the request of Mr. Riley.  (ECF No. 21-6 at Pg ID 170.)  Even if Mr. Riley intended to cause Mr. Hackney's termination because Mr. Hackney stood up to him, there exists evidence that Mr. Berghoefer's decision was "based on factors untainted by retaliatory animus," each of which were "sufficient to justify the ultimate decision."  *Seoane-Vazquez*, 577 F. App'x at 428.  Specifically, the emails Ms. Hazimi sent to Mr. Hackney dating back to April 16, 2023, amassed a lengthy, written record of deficiencies during his six-week stint at the company.  (*See* ECF No. 21-7 at Pg ID 175-210.)  In addition, Mr. Hackney's performance did not appear to improve after the performance review, as also shown by Ms. Hazimi's emails.  (*See id*.; ECF No. 21-6 at Pg ID 170.)

Any arguments that Mr. Hackney's work performance could not have been a legitimate factor because he was untrained and did not have the resources needed to improve his performance do not hold up against the record.  For example, Ms. Hazimi's corrections largely related to Mr. Hackney submitting paperwork with inaccurate and missing information.  (*See* ECF No. 21-7 at Pg ID 175-78.)

25

Mr. Hackney's performance was a legitimate factor for termination and contributed to Mr. Berghoefer's decision, which, in turn, obliterates any genuine dispute that Mr. Riley was the but-for cause of the adverse action. Mr. Hackney does not have any basis to hold LaFontaine liable under the cat's paw doctrine.

## IV.   Conclusion

Based on the foregoing, the Court finds that despite establishing a prima facie case, Mr. Hackney's retaliation claims fail because he does not establish a genuine issue of material fact as to the causation requirement under the cat's paw theory of liability. Thus, LaFontaine is entitled to summary judgment regarding Mr. Hackney's claims.

Accordingly,

**IT IS ORDERED** that Defendant LaFontaine Chrysler Dodge Jeep Ram of Clinton, Inc.'s motion for summary judgment (ECF No. 21) is **GRANTED**.

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: September 23, 2024